```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**FRANKFORT**

| | |
|---|---|
| WALTER EDMUND SMITH, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LEVEELIFT, INC., )<br>)<br>    Defendant, Third- )<br>    Party Plaintiff, and )<br>    Counter Defendant, )<br>)<br>v. )<br>)<br>SKYJACK, INC., )<br>)<br>    Third-Party Defendant, )<br>    Third-Party Plaintiff, and )<br>    Counter Defendant, )<br>)<br>v. )<br>)<br>MIDWEST STEEL, INC., )<br>)<br>    Third-Party Defendant )<br>    and Counter Claimant. )<br>)<br>) | Civil Action No. 3:04-02-JMH<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

                      **   **   **   **   **

       This matter is before the Court on motion of Defendant Leveelift, Inc. ("Leveelift") for summary judgment [Record No. 47]. The plaintiff responded [Record No. 49] and the defendant replied [Record No. 51].

**Procedural Background**

       The plaintiff, Walter Edmund Smith ("Smith"), filed the instant action against the defendant Leveelift for injuries

sustained on March 19, 2003, while the plaintiff was operating a Skyjack 3219 scissor lift ("3219 lift" or "the lift").  The complaint alleges that as lessor of the 3219 lift, Leveelift caused the plaintiff's injuries because the lift's design was defective.  On September 13, 2004, Leveelift filed a third-party complaint against Skyjack, Inc. ("Skyjack"), the manufacturer of the 3219 lift, for indemnity and contribution.  As of the date of this Order, the plaintiff has not filed any claims against the manufacturer Skyjack.

On April 19, 2005, Leveelift and Skyjack jointly filed third-party complaints[1] against Midwest, alleging Midwest had a duty to warn the plaintiff about the lift's mechanical problems and/or to report the problems to Leveelift.  Midwest then filed a counter claim against Skyjack and Leveelift, alleging that the Kentucky Workers Compensation Act provides that Midwest is entitled to recover benefits paid to the plaintiff if the plaintiff receives damages from either Skyjack or Leveelift.

### Factual Background[2]

On March 14, 2001, the defendant purchased the 3219 lift from Skyjack, who manufactured the product in September of 1996.

---

[1] The parties jointly filed the same third-party complaint, which has been entered once as to each party in Record Nos. 45 & 46.

[2] Additional facts are also discussed throughout as necessary to the Court's ruling.

Midwest rented the lift from the defendant on March 6, 2003. Eleven days after Midwest rented the lift, on March 17, 2003, the plaintiff was working in the lift bolting a beam over his head.  In order to perform the work on the beam, the plaintiff had to lean against the perimeter of the safety bar.  While working on the beam, the plaintiff's safety harness became entangled with the control box joy stick.  The plaintiff's weight pulled the joy stick and the lift inadvertently elevated.  The plaintiff's arm was subsequently pinned against the beam and he sustained injuries. The plaintiff's complaint alleges strict liability and negligence claims for defective design.  The plaintiff claims that the "defect complained of in the instant case is the wear and tear on the aluminum gate that caused the safety feature (which should have prevented the joy stick from engaging) to be inoperable."  (Pl.'s Resp. at 6.)

The defendant asserts that summary judgment should be granted for three reasons.  First, the defendant argues that Kentucky's Middleman Statute provides an affirmative defense for retailers under circumstances present in the instant case.  Second, the defendant argues that the plaintiff can not prove causation. Third, the defendant argues the plaintiff's employer, Midwest, breached the parties' lease agreement by failing to inform the defendant of the reported problem and that Midwest employees were

not using the lift according to the procedures and protocols set out in industry regulations.

## Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of an issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party, in this case the plaintiff, when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885.

## Analysis

**A. Middleman Statute**

The defendant argues that Kentucky's Middleman Statute provides immunity for retailers, such as itself, against the plaintiff's strict liability and negligence claims for design defect. The Middleman Statute provides,

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer, shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer.

KRS § 411.340 (West 2003).

5

The statute has been construed to require: (1) that the manufacturer is identified and subject to the jurisdiction of Kentucky courts; (2) that the retailer sold the product in its original manufactured condition, or in the same condition as the retailer received it; (3) that the retailer neither breached an express warranty nor knew/reasonably should have known that the product was defective. *Edwards v. Hop Sin, Inc.*, 140 S.W.3d 13, 17 (Ky. Ct. App. 2003); *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 60 (Ky. Ct. App. 1999). According to the statute, Leveelift bears the burden in proving the elements by a preponderance of the evidence. KRS § 411.340. Only the last three elements are at issue because the plaintiff concedes that the first element is met. (Pl.'s Resp. at 3.)

The defendant argues that the second element is met by the plaintiff's admission in the complaint that the lift was in the same condition at the time of the accident as it was when the defendant purchased the lift from Skyjack. The plaintiff's complaint states that "[a]t all times relevant hereto the SkyJack 3219 Lift was in substantially the same condition as when it was leased or distributed and placed in the stream of commerce by the Defendant Leveelift." (Pl.'s Compl. at ¶ 7.) The defendant also submitted an affidavit of Lowell Deskins ("Deskins"), a Leveelift salesperson, that states that Leveelift did not alter or modify the product in any way and that the product was in substantially the

6

same condition when rented to Midwest as it was when Leveelift received it. (Def.'s Reply, Ex. F at ¶¶ 7 & 8.)

The plaintiff argues that the language in the complaint is not a judicial admission of the condition of the product prior to Midwest obtaining the product. Instead, the plaintiff argues that the statement in the complaint merely alleges that the product was in substantially the same condition when the accident occurred as it was when leased from Leveelift. The plaintiff also argues that the defendant has not met its burden in proving element two because the defendant admits it made repairs to the product. Further, the plaintiff argues that the Donan Engineering Report, completed at the request of the defendant following the accident, creates an issue of fact because it proves that the product was worn. The Donan Report states,

> [T]he failure of the joystick enable switch on the lift could have allowed the unintended movement of the machine if the joystick was inadvertently moved. The failure appears to be the result of wear of the gate intended to prevent the joystick from moving unless the enable switch was engaged.

(Pl.'s Resp., Ex. 3 at 4.)

The Court agrees with the plaintiff that the statement in the complaint does not amount to a judicial admission on the condition of the product during the time Leveelift obtained the lift from Skyjack and then leased the lift to Midwest. The language of the complaint merely refers to the condition of the product *after*

7

Midwest rented the product from Leveelift, but does not speak to the condition of the product prior to the rental.

The Court does not agree with the plaintiff, however, that there are genuine issues of material fact as to the second element. Deskins's affidavit clearly states that the lift and the control box were not altered by Leveelift, thereby meeting element two. The Donan Report does not create a genuine issue of material fact as to this element because merely stating that the control box was worn after the accident fails to prove that the product was altered by Leveelift after the company purchased the lift. For instance, it is possible that the product was worn when purchased from Skyjack. Plaintiff's evidence, thus, does not controvert Defendant's evidence concerning whether Leveelift altered the product.

As to the first part of the third element, breach of an express warranty, the defendant states that the plaintiff admits that no one from Leveelift spoke to the plaintiff, therefore proving that the defendant did not make any express warranties to the plaintiff. (Pl.'s Depo. at 124.) The defendant also argues that the only warranty provided to the plaintiff's employer, Midwest, was a promise to "service and maintain the equipment in proper working condition." (Def.'s Mem. in Supp., Ex. A at 2). The defendant notes, however, that the warranty was contingent upon Midwest's duty to "notify the Lessor immediately of accidents,

8

disabilities, failures or like information concerning the equipment[,]" (*Id.*, Ex. A at 2), and to "promptly advise [the defendant] when the unit [was] not operating properly[,]" (*Id.*, Ex. A at 1). The defendant submitted evidence that Midwest's employee, Livingston, knew before the accident that the joy stick moved without raising the safety ring. (*Id.*, Ex. B.) Livingston told his superior, but the problem was never reported to Leveelift. (Deskins's Depo. at 54.)

The plaintiff, on the other hand, argues that Leveelift breached the express warranty in the lease agreement to maintain the product in good working condition. In support, the plaintiff submitted the deposition testimony of David E. Lambert ("Lambert"), President of Leveelift, who testified that the 3219 lift was inspected on March 6, 2003, and that the lift would not be in good working condition if the joystick could be moved without lifting the safety gate. (Pl.'s Resp., Ex. 4 at 20-21.) Lambert also testified that he inspected the lift after the accident and that he would not have considered the machine to be in good working condition if it elevated without lifting the safety gate. (*Id.* at 20.) The plaintiff also argues that Deskins's testimony states that he noticed after the accident that there was wear on the safety gate and that the wear could not have occurred in the time period Midwest had the lift. (*Id.*, Ex. 2 at 22 & 50.) Deskins

9

testified that it was the service technician's job to discover when normal wear and tear affected safety devices. (*Id.*, Ex. 2 at 59.)

The plaintiff's evidence is of no consequence, however, because the plaintiff did not allege that the defendant breached an express warranty in the complaint. The plaintiff only alleges strict liability and negligence claims for design defect. (Pl.'s Compl.) Therefore, this element is not applicable because the plaintiff did not assert an express warranty claim.

Finally, the defendant argues that the plaintiff has failed to show the lift had a design defect and, further, that even if the product was defective in design, that the defendant did not know of the defect.[3] In support, the defendant submits that the Donan Report states the wear was visible upon "*close* inspection." (Def.'s Mem. in Supp. of Summ. J., Ex. C at 3) (emphasis added). The plaintiff argues that there are genuine issue of material fact as to the fourth element, citing the same evidence discussed *infra*.

The Court finds, however, that there are not genuine issues of material fact as to the final element. None of the plaintiff's evidence proves that the defendant knew or should have known of the

---

[3] Additionally, the defendant argues that under Kentucky law, there is a presumption that has been unrebutted that a product is not defective if the accident occurs more than eight years after the product is manufactured. KRS § 411.310 (West 2004). The presumption, however, is not appropriate in this case because it is uncontested that the lift was manufactured in September of 1996 and the accident occurred in March of 2003. Because the accident occurred only *seven* years after the product was manufactured, the presumption does not apply.

design defect.  Evidence of mere wear and tear of a product does not show the product's design was defective.  Even assuming the wear was visible prior to Midwest's rental of the lift, the plaintiff has provided no evidence that the defendant knew or should have known that wear of the safety gate was a design defect.  Lambert's testimony stating that the lift would not have been in good working condition if the joystick allowed the lift to move inadvertently likewise does not prove that the defendant had notice of a design defect.  Simply put, the plaintiff has not shown how knowledge of wear leads one to know of a design defect.  *See Weixler v. Paris Co.*, No. 3:02-CV-390-H, 2003 WL 105503, at *2 (W.D. Ky. 2003) (dismissing plaintiff's claims against a defendant retailer, noting that knowledge of prior accidents or design considerations were not alleged against the defendant) (unpub.).

Because the Court finds that the defendant is entitled to the affirmative defense for retailers, the Court does not reach the defendant's remaining arguments.  Further, because the defendant is no longer subject to liability, the Court dismisses the third-party complaints of Skyjack and Leveelift and the counterclaim of Midwest because the aforementioned claims are in the nature of indemnity and subrogation.

### Conclusion

For the foregoing reasons and in accordance with the Court's Judgment of even date, **IT IS ORDERED:**

(1) That Leveelift's motion for summary judgment [Record No. 47] be, and the same hereby is, **GRANTED**.

(2) That the plaintiff's claims against Leveelift be, and the same hereby are, **DISMISSED WITH PREJUDICE**.

(3) That Leveelift and Skyjack's third-party complaints be, and the same hereby are, **DISMISSED WITH PREJUDICE**.

(4) That Midwest's counterclaim be, and the same hereby is, **DISMISSED WITH PREJUDICE**.

(5) That the matter be, and the same hereby is, **STRICKEN FROM THE ACTIVE DOCKET**.

This the 6th day of October, 2005.

Signed By:

*Joseph M. Hood*

United States District Judge